IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| COURTNEY GILLESPIE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-00188-CV-W-ODS |
| | ) |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits. The Commissioner's decision is affirmed.

I. INTRODUCTION

Plaintiff was born in November 1970, completed high school and has prior work experience as a partsmaker and automobile assembly-line worker. She initially alleged she became disabled on February 13, 2008, but amended her alleged onset date to January 1, 2011. R. at 32-33. The ALJ determined Plaintiff's severe impairments included degenerative lumbar disc disease, status post laminectomy with radiculopathy, sacroiliitis, fibromyalgia and labral tear of the left hip. The ALJ found Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform light work…in that she can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours total during an 8-hour workday; and sit 6 hours total during an 8-hour workday. However, she would need the opportunity to alternate sitting/standing every 30 minutes. She can occasionally climb ramps/stairs but never climb ladders, ropes and scaffolds. The claimant can occasionally stoop but never balance, kneel, crouch or crawl. She should avoid exposure to extreme cold and wetness. The claimant should also avoid work at unprotected heights. R. at 18.

Based on the testimony of a vocational expert, the ALJ determined Plaintiff could not perform her past relevant work but could work as an electronic assembler, mail router and price marker. R. at 22.

## II. DISCUSSION

In this proceeding, Plaintiff contends the ALJ committed three errors. First, she alleges the ALJ failed to accord proper weight to the opinion offered by Dr. Douglas McCune. Second, she contends the RFC is not supported by substantial evidence in the Record as a whole because the ALJ based the RFC on Dr. Q. Michael Ditmore's opinion. Third, she alleges the ALJ failed to do a proper credibility analysis.

"[R]eview of the Secretary's decision [is limited] to a determination hether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence when reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994)(citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991) (citing *Hutsell v. Sullivan*, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

### A.

Plaintiff argues the ALJ failed to accord sufficient weight to Dr. McCune's opinion. Generally speaking, a treating source's opinion is entitled to deference. This general rule is not ironclad; a treating source's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. *E.g.*, *Anderson v. Astrue*, 696 F.3d 790, 793-

2

Case 4:14-cv-00188-ODS   Document 15   Filed 11/12/14   Page 2 of 7

94 (8th Cir. 2012); *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996).

At issue are two Medical Assessments of Ability to Do Work-Related Activities forms which Dr. McCune completed – one in October 2011 and one in February 2012. Plaintiff appears to maintain the only reason the ALJ discounted Dr. McCune's opinions was because they were checkbox forms. Pl. Br. At 11-12.

As an initial matter, checkbox forms generally have little evidentiary value when they provide "little to no elaboration." *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Here Dr. McCune did provide some notes in his two forms. R. at 319-23, 342-46. However, as the ALJ stated, the forms did not provide "any significant rational[e]." R. at 21.

Further, the ALJ did not discount Dr. McCune's opinions only because they were checkbox forms. Instead, the ALJ provided two additional reasons for discounting Dr. McCune's opinions. Plaintiff does not acknowledge or address either of these reasons.

First, the ALJ found there was no medically determinable impairment that supported Dr. McCune's opinions regarding Plaintiff's manipulative and upper extremity limitations. R. at 21. In his October 2011 form, Dr. McCune maintained Plaintiff could never use her right or left hand for simple grasping or fine manipulation. R. at 321. In his February 2012 form, Dr. McCune maintained Plaintiff could continuously use her right and left hand for simple grasping and fine manipulation. R. at 344. The Record provides some evidence Plaintiff experienced some pain in her hands. R. at 263, 361-62. But the Record also provides evidence Plaintiff participated in sewing and quilting, which contradicts Dr. McCune's suggested limitation. R. at 151.

Second, the ALJ determined Plaintiff's daily activities were inconsistent with the limitations described in Dr. McCune's forms. R. at 21. For example, Plaintiff does laundry, does the dishes and prepares meals. R. at 147. She helps her son get ready for school and helps him with his physical therapy. R. at 147-48. She gardens for approximately one hour at a time. R. at 148. She runs errands once a week, and if she goes into the city for the errands she usually is

3

gone for more than three hours. R. at 150. She goes to the elementary school for different activities in her son's class and helps with his four yearly class parties that last an hour each. R. at 151. In his February 2012 form, Dr. McCune opines Plaintiff can stand for only one hour total per day, walk one hour total per day and sit two hours total per day. R. at 343. The variety of activities in which Plaintiff participates appears to be inconsistent with Dr. McCune's limitations.

Because Dr. McCune's opinion is contrary to other evidence in the Record, the ALJ properly discredited his opinion.[1]

### B.

Plaintiff contends the RFC is not supported by substantial evidence in the Record as a whole because the ALJ based the RFC on the opinion of Dr. Q. Michael Ditmore, a non-examining physician.

Plaintiff argues Dr. Ditmore did not follow Form 4743's instructions in rendering his opinion. Form 4743 instructs Dr. Ditmore to "describe how the evidence substantiates [his] conclusions" and to consider "any alleged limitations imposed by symptoms." R. at 324. However, in forming his opinion, Dr. Ditmore points to the July 2011 exam with Dr. Thomas Scott and Plaintiff's "complaints of diffuse muscle and joint pain." R. at 325. Plaintiff also contends Dr. Ditmore, as compared to Dr. McCune, did not review the complete medical record in completing his form. This is a curious argument because Dr. McCune, like Dr. Ditmore, completed his first form in October 2011. Then Dr. McCune completed his second form in February 2012. The medical record did not greatly expand between October 2011 and February 2012. Instead, during that time, there is only one additional piece of medical evidence, and that piece of evidence does

---

[1] Plaintiff provides this Court with a third opinion in narrative form completed by Dr. McCune in February 2013. R. at 395. Despite its narrative form, this opinion presents many of the same problems as Dr. McCune's previous two forms. Dr. McCune describes limitations regarding Plaintiff's manipulative and upper extremities. As discussed in Section II.A, the Record does provide some evidence of some pain in Plaintiff's upper extremities. But there also is evidence that Plaintiff participates in sewing and quilting, which contradicts Dr. McCune's suggested limitations. Next, as the ALJ found, the variety of daily activities in which Plaintiff participates does not seem to comport with the limitations Dr. McCune describes. Additionally, Dr. McCune's opinion appears to be based largely on Plaintiff's self-reports, which, as described in Section II.C, the ALJ found not to be credible.

4

not suggest any marked changes in Plaintiff's health. R. at 330. Plaintiff also maintains Dr. Ditmore did not consider her use of "duragesic patches, Fentanyl or Vicodin." But in his opinion, Dr. Ditmore points to a July 2011 exam which describes Plaintiff's use of Fentanyl patches and Vicodin. R. at 237.

Additionally, Plaintiff argues that because Dr. Ditmore is not a treating physician, reliance on his opinion does not constitute substantial evidence on the Record as a whole. However, Plaintiff's characterization is not complete. It is true that "the record must include some medical evidence that supports the ALJ's residual functional capacity finding." *Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000). But "in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Rather, "the Commissioner must determine a claimant's RFC based on all of the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Here, the ALJ did not rely just on Dr. Ditmore's opinion in formulating Plaintiff's RFC. The ALJ relied on Plaintiff's daily activities, much of which is detailed in Section II.A. Additionally, the ALJ relied on medical evidence. For example, the ALJ pointed to treatment notes from Dr. Thomas Scott, Dr. Shavonne Danner and Dr. Salman Malik. R. at 20. Evidence of Plaintiff's actual daily activities and the medical evidence that existed were sufficient to support the ALJ's determination about Plaintiff's capabilities.

## C.

Plaintiff contends the ALJ failed to properly assess her credibility. In assessing Plaintiff's credibility, the critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. *House v. Shalala*, 34 F.3d 691, 694 (8th Cir. 1994). The familiar standard for analyzing claimant's subjective complaints of pain is set forth in *Polaski v. Heckler*. 739 F.2d 1320 (8th Cir. 1984). While the ALJ did not cite *Polaski* in her analysis which is the Eighth Circuit's "preferred practice," the ALJ cited to 20 C.F.R.

5

404.1529, and the requirements found therein "largely mirror the *Polaski* factors." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

The Court finds the Record provides substantial evidence to support the ALJ's determination that the Plaintiff's testimony was not credible. In making this determination, the ALJ referenced several factors. The ALJ noted Plaintiff's daily activities were inconsistent with her allegations of disabling pain, the medical record was inconsistent with her allegations of disabling pain, and her bankruptcy suggested an ulterior motive for seeking disability benefits. R. at 20-21.

Plaintiff takes issue with the last two factors. Plaintiff contends the ALJ's discussion of Plaintiff's bankruptcy "undermined" the credibility analysis. However, a claimant's financial motivation to qualify for disability benefits is a factor the ALJ may consider in his or her credibility analysis. *E.g.*, *Gaddis v. Chater*, 76 F.3d 893, 895-96 (8th Cir. 1996); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992).

Next, Plaintiff maintains the medical evidence supports her disability claims. Plaintiff points to a consultation with Dr. Salman Malik and claims Dr. Malik recommended "a surgical option for back," suggested "fusion of L4-5," and diagnosed Plaintiff with radiculopathy. Pl. Br. At 14. Plaintiff misstates the medical evidence. Dr. Malik stated Plaintiff needed a "surgical opinion" and "due consideration should be given to fusion of the L4-5 vertebral bodies." R. at 353. Dr. Malik also noted that while Plaintiff had radiculopathy, it was mild in nature. R. at 353.

Plaintiff also claims that Dr. Shavonne Danner, Dr. Salman Malik and Dr. Douglas McCune each asserted she was disabled. Again, Plaintiff largely misstates the evidence. Dr. Danner did not determine Plaintiff was disabled. Rather, Dr. Danner noted, "She [Plaintiff] states that she is disabled." R. at 349. Dr. Malik's notation that Plaintiff is disabled appears to be based on Plaintiff's self-reports. The notation is under the "Social History" section in Dr. Malik's consultation notes, in which he states, "She is married and has one child. She is disabled and lives at home with her spouse." R. at 357. While Dr. McCune may

6

have asserted Plaintiff is disabled, as described in Section II.A, the ALJ properly discredited his opinion.

Next, Plaintiff argues the ALJ improperly relied on a lack of chiropractic care to determine Plaintiff's pain was not disabling. However, this is not an accurate description of the ALJ's discussion of the medical evidence. Rather, the lack of chiropractic care was one item in a long list of medical services Plaintiff did not take advantage of to alleviate her pain. The ALJ noted Plaintiff had not had any recent hospitalization or surgery, and she had not recently participated in "physical therapy, occupational therapy, acupuncture, chiropractic adjustments, or osteopathic manipulations." R. at 20. The ALJ does not appear to be suggesting Plaintiff should seek out chiropractic care specifically. Rather, the ALJ appears to be suggesting that because Plaintiff has not participated in any of these medical services, Plaintiff's claims of pain are exaggerated.

The task of weighing credibility factors falls on the ALJ, not the District Court. *E.g.*, *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ provided good reasons for discounting Plaintiff's credibility that are consistent with *Polaski*. Accordingly, the ALJ's decision is entitled to deference. *E.g.*, *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012).

### III.   CONCLUSION

The Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED

                                                  /s/ Ortrie D. Smith
                                                  ORTRIE D. SMITH, SENIOR JUDGE
DATE:  November 12, 2014              UNITED STATES DISTRICT COURT